660 A.2d 583

**PHAR–MOR, INC., an Ohio Corporation, Appellant,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 1776, AFL–CIO, CLC and All Members Acting in Concert Within and Agents Thereof, Appellees.**

Supreme Court of Pennsylvania.

Argued Jan. 25, 1995.

Decided June 20, 1995.

Reargument Denied Sept. 28, 1995.

David B. Rodes, Pittsburgh, for Phar–Mor, Inc.

Wayne Wynn, Philadelphia, for United Food, et al.

Before NIX, C.J., FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ.

### OPINION IN SUPPORT OF AFFIRMANCE

ZAPPALA, Justice.

Phar–Mor, Inc. failed to establish any of the prerequisites under the Labor Anti–Injunction Act, 43 P.S. § 206a et seq., necessary to grant injunctive relief. The record in this case demonstrates that Phar–Mor sought to enjoin nothing more than peaceable leafletting and brief contacts with its employees by union agents. The trial court properly found that the union's activities did not fall within the narrowly circumscribed exceptions in § 206 under which injunctive relief may be granted.

The Labor Anti–Injunction Act deprives the courts of this Commonwealth of jurisdiction to issue any restraining order or temporary or permanent injunction in labor disputes except in strict conformity with its provisions. 43 P.S. § 206d. No restraining order or injunction may be issued contrary to the stated public policy of the Act, which is declared as follows:

> Under prevailing economic conditions developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment,

and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.

43 P.S. § 206b.

In furtherance of this stated policy, the Act provides that no court shall issue any restraining order or temporary or permanent injunction except under extremely limited circumstances. 43 P.S. § 206i. To issue a restraining order or grant injunctive relief, a court must conduct a hearing upon a complaint made upon oath and make findings of fact that each of the following prerequisites have been established:

(1) unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained;

(2) that substantial and irreparable injury to complainant's property will follow unless the relief requested is granted;

(3) that greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief;

(4) the complainant has no adequate remedy of law; and

(5) that public officers charged with the duty to protect complainant's property are unable to furnish adequate protection.

43 P.S. § 206i(a), (b), (c), (e), (f).

In this case, the parties agreed to waive an evidentiary hearing and submitted the matter to the trial court on the basis of the facts alleged in the complaint. The union agreed to accept the factual averments in the complaint as true solely for purposes of the court's decision on Phar–Mor's request for a preliminary injunction, with certain exceptions relating to the extent of damages claimed by Phar–Mor. The parties agreed that the union would file preliminary objections to the complaint on the grounds that the grant of an injunction was prescribed by the Labor Anti–Injunction Act.

Phar–Mor's complaint addressed instances of union activity at two separate locations and attached the affidavits of the store managers from each location. On July 3, 1990, the United Food and Commercial Workers Union Local 1776 began distributing literature and soliciting employees at Phar–Mor's location on Franklin Mills Circle in Philadelphia, Pennsylvania, identified as Store No. 164. The union appeared at the store during working hours to solicit employees and to distribute literature on the sales floor and within non-public areas of the facility. The union organizers and agents subsequently appeared at Store No. 164 on three separate occasions on August 7, 1990, on October 8, 1990, and on November 14, 1990. Six organizers distributed literature on October 8, 1990; eight organizers were present on November 14, 1990.

The affidavit of Bill Vincent, Store No. 164's manager, provided additional details of the union organizers' activities on those occasions. Vincent stated that on July 3, 1990, the organizers distributed union materials and cards to employees throughout the store during work hours. On July 8, 1990, a store meeting was held at 6:30 p.m. for all store employees. One hour later, 12 vehicles pulled into the store parking lot. The individuals who were in the vehicles handed out union materials and cards to employees as they were leaving and also placed the materials on windshields of cars in the parking lot. Vincent informed the organizers of Phar–Mor's No Distribution/No Solicitation policy and asked them to vacate the premises. He called mall security and the Philadelphia Police Department when they refused to leave. At that time most of the Phar–Mor employees had gone, leaving the organizers' vehicles, three mall security chiefs, five Philadelphia police vehicles and one unmarked police vehicle parked in front of the store. This show of security and police force was the manager's response to the mere presence of the union organizers and leafletting outside of the store. The organizers left.

On July 9, 1990, four union organizers entered the store. The store manager spoke with them about Phar–Mor's policy and asked them to leave. After a brief discussion, Vincent asked one of the individuals to get out of the store. On

August 7, 1990, the union organizers solicited the employees during work hours and distributed literature throughout the store. On September 24, 1990, a Phar–Mor employee who was not scheduled to work was found placing union literature into employee time card slots. She was informed that this was in violation of Phar–Mor's policy and was asked to stop.

On October 8, 1990, six organizers attempted to distribute union flyers to employees during work hours. The literature was left scattered throughout the store. On November 14, 1990, approximately eight organizers entered the store and went in different directions to speak with employees who were on duty. They were escorted out of the building but attempted to return. The Civil Affairs Division of the Philadelphia Police Department was called, but the store received no response.

As to Phar–Mor's Store No. 223 located at Great Northeast Plaza in Philadelphia, the complaint asserted only that the union has repeatedly entered the store to solicit employees and distribute literature. The literature was discovered by employees throughout the store, including shelf areas. The affidavit of Mike Moran, the manager, stated that the union appeared at the store on July 3, 1990. He indicated that organizers repeatedly attempted to enter the store after that to solicit employees and distribute literature. The affidavit failed to specify any dates other than July 3, 1990, or even the number of occasions on which the organizers appeared at the store.

Moran indicated that he informed the organizers of Phar–Mor's policy and asked them to vacate the premises. The organizers resisted leaving the store and occasionally shouted at management personnel within the store. On one occasion, he called the Civil Affairs Division of the Philadelphia Police Department for assistance.

The presence of the union organizers at Store No. 164 to distribute literature and to speak to employees on four occasions averaging once per month was claimed to have caused "a severe disruption of [Phar–Mor's] work force." Phar–Mor

complained that the appearance of the stores had been negatively affected by distribution of union literature resulting in a loss of goodwill with its customers. There was no claim that the union's activity at either store caused any personal or property damage. Nor did Phar–Mor assert that the presence of the union organizers at Store No. 223, or at Store No. 164 during the four days spread throughout July to November, caused a loss of revenues.

On February 5, 1991, the trial court entered an order dismissing Phar–Mor's Petition for Preliminary Injunction. The court specifically found that none of the prerequisites to the grant of injunction required under 43 P.S. § 206i had been established. The court noted that Phar–Mor's sole basis for injunctive relief was that union proponents had approached its employees on store property to discuss the benefits of union membership and to distribute pro-union literature.

In the absence of any allegation or suggestion that there had been damage to Phar–Mor's property or any injury to its customers, employees, or management personnel, the trial court concluded that injunctive relief was inappropriate. The court specifically found that

> ... there was no testimony or evidence, with the exception of the few moments which a Union proponent engaged an employee in conversation regarding the benefits of Union membership, that the conduct of plaintiff's business has been in any way disrupted. On the contrary, testimony tended to show that employees and customers have been free to enter and exit plaintiff's premises without threats of coercion or intimidation, and sales have been transacted without interruption.

(Trial court slip opinion at 7). The court determined that union activity which inconvenienced Phar–Mor's No Solicitation/No Distribution policy was an insufficient basis for relief and that "there was absolutely no reasonable basis ... to conclude that defendant has engaged in any illegal activity."

The standard of review of the grant or refusal of a preliminary injunction requires consideration only of whether

there were any apparently reasonable grounds for the action of the lower court. *Wilkes–Barre Independent Company v. Newspaper Guild, Local No. 120*, 455 Pa. 287, 314 A.2d 251 (1974). "[W]e will not further consider the merits of the case or pass upon the reasons for or against such action, unless it is plain that no such grounds existed or that the rules of law relied on are palpably wrong or clearly inapplicable." Id., 455 Pa. at 289, 314 A.2d at 253 (Citation omitted.).

 Pursuant to § 206i of the Labor Anti–Injunction Act, injunctive relief may not be granted unless all of the prerequisites have been established. The record in this case supports the trial court's conclusions that none of the prerequisites were met. No unlawful acts were committed or threatened to be committed by the union. The distribution of union literature in the stores and contact with store managers is not unlawful conduct under 206i(a).[1]

 No evidence was submitted which would establish that substantial and irreparable injury to Phar–Mor's property would follow unless an injunction was granted. Phar–Mor's discomfort that the stores' condition fell below its customary maintenance standard is neither a substantial nor irreparable injury to property. Litter resulting from the distribution of handbills fails to satisfy this standard.

This case falls far short of the activity which was found to be sufficient to warrant issuance of an injunction in *Giant Eagle Markets v. United Food and Commercial Workers Union, Local Union No. 23*, 539 Pa. 411, 652 A.2d 1286 (1995). There, the trial court had granted injunctive relief based upon evidence that union workers were engaged in mass picketing during a strike, resulting in violence and intimidation directed against employees and individuals who wished to cross the picket line. Witnesses testified that fifty to sixty pickets would stand shoulder to shoulder and block store entrances and exits, sometimes surrounding customers to prevent them

1. I agree with the lower courts that the union's disregard of Phar–Mor's No Solicitation/No Distribution policy by engaging in discussions with employees and leafletting was not an unlawful act of criminal trespass under the Crimes Code, 18 Pa.C.S.A. § 3503.

from entering. Various violent acts occurred during the pickets, including a shattered windshield of a delivery van, flattened tires of another delivery truck, and rodent traps in the aisles of one store.

We stated that isolated instances of the application of force or intimidation do not constitute a seizure, but "when pickets begin a consistent pattern of subjecting customers and employees to such acts, a seizure occurs...." *Id.* 539 Pa. at 425, 652 A.2d at 1292. We concluded that the trial court had reasonable grounds to find that the actions of the pickets had the effect of denying Giant Eagle's agents and employees free access to its property. We held that mass picketing constitutes a "seizure" under Section 206d of the Labor Anti-Injunction Act "when it ceases to perform its lawful purpose of placing the public on notice that a strike is underway, and instead becomes a means of influencing labor negotiations through harassment and intimidation." *Id.,* 539 Pa. at 426, 652 A.2d at 1293.[2] The mass picketing and resulting seizure of the employer's property which established a basis for injunctive relief is not present in the instant case.

Nor does the union's activity rise to the level of the actions in *Indiana Cobra v. Local No. 23,* 406 Pa.Super. 342, 594 A.2d 368 (1991), alloc. den., 530 Pa. 655, 608 A.2d 30 (1992), in which the Superior Court reversed a trial court order granting injunctive relief to the owner and operator of a Giant Eagle supermarket. The evidence established that union pickets appeared at the store to pass out leaflets and to advertise that it was a non-union store. Approximately ten to twelve pickets would block the exit from the store and customers were forced to push through them or to walk on a busy thoroughfare. Store employees and customers pushing carts had to walk on the street to avoid physical confrontation with the pickets. Pickets used threatening language and gestures to customers and employees.

**2.** Section 206d, 43 P.S. § 206d, establishes a separate basis for the grant of injunctive relief in instances where the activities of a labor organization or its members result in a seizure of the property of the employer.

The Superior Court indicated that the trial court failed to make the requisite findings under § 206i. The trial court had merely stated in its opinion that there was the danger of public disorder and irreparable harm and an attempt to seize the store's property. The Superior Court held that the evidence was insufficient to prove a seizure of the property and that there was no factual basis to support the findings required to enjoin the union's informational picketing activities.

In this case, the lower courts found (1) that Phar–Mor had failed to show that the inconveniences occasioned by the union's sporadic appearances at its stores and distribution of literature would result in a greater injury to Phar–Mor than the harm that would result if the union was precluded from peacefully dispensing union information to Phar–Mor employees; and (2) that the police department's failure to take action reflected its belief that the union activity did not constitute unlawful behavior rather than an inability to handle the situation. The record supports these conclusions as well. For these reasons, the order of the Superior Court should be affirmed.

CAPPY and CASTILLE, JJ., join this Opinion in Support of Affirmance.

### OPINION IN SUPPORT OF REVERSAL

FLAHERTY, Justice.

This case involves the scope and application of the Pennsylvania Labor Anti–Injunction Act, 43 P.S. § 206a et seq. Phar–Mor, Inc., sought injunctive relief against allegedly illegal, trespassory on-premises solicitation of Phar–Mor employees as part of organizing efforts by the United Food and Commercial Workers Union Local 1776 (UFCW), after local police had refused to interfere without a court order. The trial court held that injunctive relief was barred by the provisions of the labor anti-injunction act, and the decision was affirmed by the Superior Court. We granted allocatur to review the interpretation and application of the act.

Phar–Mor initiated this suit by filing a complaint and a petition for a temporary restraining order or a preliminary injunction against UFCW. The parties agreed that no evidentiary hearing was necessary but that UFCW would, for purposes of ruling on preliminary injunctive relief, accept the facts in the complaint and petition as true; UFCW filed preliminary objections, however, claiming that the factual allegations, if true, did not warrant relief. The agreed-upon facts are as follows.

Phar–Mor operates a chain of retail stores including two in Philadelphia which are the subject of this lawsuit. Throughout the latter half of 1990, UFCW sent organizers to the stores to solicit Phar–Mor employees to join the union. The organizers entered the stores to talk with employees and to distribute union literature. Phar–Mor, at all relevant times, maintained and enforced a company-wide policy stated as follows: "Solicitation and/or distribution of literature on Company premises by anyone not employed by Phar–Mor is strictly prohibited." Phar–Mor managers repeatedly informed the UFCW organizers that soliciting on-duty Phar–Mor employees and distributing literature on the sales floors and in non-public areas of the stores was a violation of the no-solicitation policy and repeatedly requested that the organizers leave the premises.

UFCW organizers ignored Phar–Mor's requests and warnings, disrupting Phar–Mor's business by interrupting its employees' work, leaving literature scattered throughout the stores, harassing Phar–Mor employees, and shouting at Phar–Mor managers, thereby adversely affecting Phar–Mor's customer goodwill. Phar–Mor sought assistance from Philadelphia police against UFCW's trespasses, but the police indicated that they would not act without a court order.

Based on these facts, the trial court refused to grant injunctive relief, citing the Pennsylvania Labor Anti–Injunction Act. The court focused on the requirements of 43 P.S. § 206i, which provides:

**§ 206i. Basis for labor injunctions**

No court of this Commonwealth shall issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition thereto, if offered, and except after findings of fact by the court to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, but no temporary or permanent injunction or temporary restraining order shall be issued on account of any threat or unlawful act, excepting against the person or persons, association or organization, making the threat or committing the unlawful act, or actually authorizing or ratifying the same after actual knowledge thereof.

(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted.

(c) That, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief.

(d) That no item of relief granted is relief which is prohibited under section six of this act [43 P.S. § 206f].

(e) That complainant has no adequate remedy at law; and

(f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection.

The court summarized the act as follows:

the complainant must specifically show, inter alia, that there has been threat of injury or actual injury to person or irreparable injury to property, and it must also be shown that union activists have committed unlawful acts for which the local police cannot furnish adequate protection. "Without substantial evidence to indicate that the employees

seized, held, damaged, or destroyed the employer's property with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining," the court lacks jurisdiction to enjoin union activity under the Act and thus, the court cannot grant injunctive relief. *PHK–P, Inc. v. Local 23*, 381 Pa.Super. 544, 554 A.2d 519 (1989).

The court concluded that injunctive relief was proscribed because "there was no evidence ... of any unlawful ... acts committed or threatened by defendant." The Superior Court, applying the same statute, affirmed, holding: "No unlawful acts have been committed and no threats of unlawful activity have been made." 429 Pa.Super. at 399, 632 A.2d at 916.

We are not satisfied that the Superior Court's restatements of the statute are correct, but, even under its own interpretation, it seems that the court ignored clearly unlawful behavior by the UFCW. Both courts concluded that UFCW's disregard for Phar–Mor's posted no-solicitation policy did not constitute "an unlawful act of criminal trespass" as there was "no breach of the peace," meaning there was no violence or physical destruction of property. *Id.* Criminal trespass is defined as follows in the Crimes Code:

**(b) Defiant trespasser.—**

(1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:

(i) actual communication to the actor; or

(ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders;

. . . .

**(c) Defenses.—**It is a defense to prosecution under this section that:

. . . .

(2) the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises; ...

18 Pa.C.S. § 3503(b) and (c). It is conspicuously not a defense that the intrusion was peaceable. It is glaringly evident that under the stated facts, the acts of the UFCW organizers constituted criminal trespass. It follows that the first requirement of 43 P.S. § 206i has been met: "unlawful acts have been ... committed and will be continued unless restrained." There is no requirement in section 206i(a) that the unlawful acts be aggravated by violence, vandalism, or viciousness.

The trial court did not discuss the other requirements of section 206i, for its holding that no unlawful acts had been committed made it unnecessary to address the additional requirements. The Superior Court briefly discussed the other elements, holding that Phar–Mor had failed to establish those remaining requirements under the statute. We, too, will address the additional requirements for injunctive relief.

First is the requirement of a substantial and irreparable injury. The Superior Court ignored the allegation of such injury to the goodwill of Phar–Mor customers and the deprivation of its right as owner to exclude others from enjoying its property. These are substantial property interests, loss of which has traditionally been deemed to be irreparable injury. See, e.g., Kaiser Aetna v. United States, 444 U.S. 164, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979).

The next statutory requirement is balancing the respective injuries which will flow from granting or denying an injunction. The Superior Court's view was that the "inconveniences" suffered by Phar–Mor could not compare with UFCW's "right under the [Labor Anti–Injunction] Act to engage in collective action to protect and further employee economic interests." 429 Pa.Super. at 401, 632 A.2d at 917. This is a superficial and inadequate comparison. We have already concluded that Phar–Mor suffered more than inconvenience—its injury was substantial and irreparable. Against that must be weighed the loss to the union; inasmuch as the UFCW has no right to conduct its organizing activities on Phar–Mor property, an injunction prohibiting such activities causes no loss to the union whatsoever. In attempting to organize Phar–Mor employees, the UFCW will retain all such

rights as are guaranteed by the act and which may be conducted lawfully. It seems clear that the limited injunctive relief which has been requested will result in no loss to the union but is necessary to prevent injury to protected property rights of Phar–Mor.

The Superior Court concluded that "the injunctive relief requested by Phar–Mor is specifically prohibited by 43 P.S. § 206f," 429 Pa.Super. at 402, 632 A.2d at 918, listing seven provisions of the statute supposedly violated by the relief requested by Phar–Mor. The only explanation given by the court is that UFCW "used peaceful, non-destructive means" in its organizing efforts. While its activities were peaceful and non-destructive, they were not legal. Organizing activities which are legal in one time and place may be illegal in another context, and illegal activities are subject to injunction. The injunctive relief sought by Phar–Mor is simply to keep UFCW from trespassing—*not to keep UFCW from conducting lawful union activities at any time or any place other than Phar–Mor property.*

The next requirement of the anti-injunction statute is that there be no adequate remedy at law. The Superior Court stated that "Phar–Mor has an adequate remedy at law since it has filed a complaint with the National Labor Relations Board alleging unfair labor practices." *Id.* As to the distinction between legal and equitable remedies, resort to federal labor law has no application whatsoever. Federal labor law manifestly provides equitable, injunctive relief, so it is clear that mere resort to the NLRB does not indicate the availability of an adequate remedy at law. Thus, the requirement of 43 P.S. § 206i(e) has not been violated by Phar–Mor, as equitable relief is the only adequate remedy for the injury.

The Superior Court apparently had reference to the doctrine of preemption, according to which the National Labor Relations Act preempts the jurisdiction of state and federal courts to regulate conduct subject to the act, which power is vested, rather, in the National Labor Relations Board, *Kerr v. Butler Building Trades Council, AFL–CIO,* 447 Pa. 247, 250, 288 A.2d 525, 526 (1972); the Pennsylvania Labor Relations

Act, likewise, vests jurisdiction of labor disputes in the Pennsylvania Labor Relations Board rather than in the state courts. *Id.* at 254, 288 A.2d at 528. However, the doctrine of preemption does not apply when "the activity regulated was a merely peripheral concern of the Labor Management Relations Act." *San Diego Building Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). The conduct of UFCW in this case is indistinguishable from that of the union in *Sears, Roebuck and Co. v. San Diego County District Council of Carpenters,* 436 U.S. 180, 98 S.Ct. 1745, 56 L.Ed.2d 209 (1978). There, the Supreme Court held that the retail store, Sears, could obtain an orderly resolution of the question whether the union had a federal right to remain on Sears property only by proceeding in state court, despite the fact that the union activities were arguably protected or prohibited by federal labor law, as they are in this case. This was so because

> the controversy which Sears might have presented to the Labor Board is not the same as the controversy presented to the state court. If Sears had filed a charge, the federal issue would have been whether the picketing had a recognitional or work reassignment objective; decision of that issue would have entailed relatively complex factual and legal determinations completely unrelated to the simple question whether a trespass had occurred. Conversely, in the state action, Sears only challenged the location of the picketing; whether the picketing had an objective proscribed by federal law was irrelevant to the state claim. Accordingly, permitting the state court to adjudicate Sears' trespass claim would create *no realistic risk of interference* with the Labor Board's primary jurisdiction to enforce the statutory prohibition against unfair labor practices.

*Id.* at 198, 98 S.Ct. at 1758, 56 L.Ed.2d at 226 (footnote omitted, emphasis added). This is equally true under our state labor laws.

Moreover, not every dispute involving employers and em-

ployees is a labor dispute.[1] As in the quotation from the *Sears* case, *supra*, the fundamental dispute in this case involves real estate; the fundamental issue is one of trespass. The trial court was not asked to decide labor law issues or to rule on activities as protected labor activities or unfair labor practices—it was asked to enjoin trespassory behavior, a simple question of property law. We conclude, therefore, that federal and state statutes do not preempt the state courts of jurisdiction in this case.

Finally, under the labor anti-injunction act, an injunction may not issue unless the police cannot provide adequate protection. The Superior Court rejected Phar–Mor's claim that the refusal of the police to act without a court order constituted evidence of inability to provide adequate protection. The Superior Court's opinion was: "The police department's refusal to act without a court order only indicates that it did not believe that intermittent conversation with employees and the scattering of literature around the [s]tores constituted unlawful behavior." 429 Pa.Super. at 401–02, 632 A.2d at 917. Such a belief on the part of the police department is not surprising in view of the holdings of the lower courts. To affirm such an erroneous conclusion that UFCW's trespassory conduct was lawful serves only to heighten the inability of the police to understand the law and to enforce it uniformly against all trespassers. Unwillingness of the police to intervene is equivalent to an inability to protect the property rights of the complainant. Certainly from the property owner's perspective the result is the same—police protection is not available and resort must be had to the courts. The holding of the Superior Court is a classical non sequitur: because the

---

1. The National Labor Relations Act, 29 U.S.C. § 152(9), gives the following definition:

 the term "labor dispute" includes any controversy concerning terms, tenure or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee.

 The Pennsylvania statute defines "labor dispute" in virtually identical terms. 43 P.S. § 206c.

police would be able to provide adequate protection if there were a court order, a court order is prohibited. We hold that this requirement of the anti-injunction statute has been satisfied.

Accordingly, the judgment of the Superior Court should be reversed, and the case remanded to the trial court for entry of appropriate injunctive relief.

This opinion is joined by NIX, C.J., and MONTEMURO, J.

MONTEMURO, J., is sitting by designation.

### ORDER

PER CURIAM.

The Court being evenly divided, the Order of the Superior Court is affirmed.

ZAPPALA, J., files an Opinion in Support of Affirmance in which CAPPY and CASTILLE, JJ., join.

FLAHERTY, J., files an Opinion in Support of Reversal in which NIX, C.J., and MONTEMURO, J., join.*

---

* Justice Montemuro is sitting by designation.