**OVERNITE TRANSPORTATION CO., Appellee,**

v.

**TEAMSTERS LOCAL 107, Appellant.**

Superior Court of Pennsylvania.

Submitted May 15, 2001.
Filed June 15, 2001.

---

Thomas H. Kohn, Philadelphia, for appellant.

Jonathan R. Nadler, Pittsburgh, for appellee.

Before: DEL SOLE, President Judge, MONTEMURO * and KELLY, JJ.

DEL SOLE, President Judge:

¶ 1 This is an appeal from a judgment entered following an order finding Appellant in civil contempt of court for violation of an injunction in a labor dispute.

¶ 2 We first address Appellee's Motion to Quash. Appellee argues that we are without jurisdiction to hear this appeal because it was filed more than 30 days after the order was entered. The relevant procedural history is as follows.

¶ 3 The order of civil contempt was entered following a hearing on April 27, 2000. On May 4, 2000, Appellant filed several pleadings before the court, including a Motion for Post–Trial Relief, a Petition for Rule to Show Cause for Reconsideration of the Court's April 27, 2000 Contempt Order and a Petition for Rule to Show Cause Why Court Order of April 27, 2000 Should Not Be Stayed Pending Consideration of Motion for Reconsideration. On May 15, 2000, the court ordered the filing of a 1925(b) statement of matters complained of on appeal. In a letter dated May 17, 2000, the trial court informed the parties: "You may disregard the request for a 1925b statement since the matter before the Court involves post-trial motions." The letter also established a briefing schedule.[1] On May 19, 2000, the trial court entered a Rule to Show Cause Why this Court's Order Entered on April 27, 2000 Should Not be Stayed and Vacated. The Rule was returnable June 12, 2000. Appellant's post-trial motions were eventually denied on September 25, 2000. The notice of appeal was filed on October 18, 2000.

¶ 4 Appellee argues that the April 27, 2000 order of civil contempt was final and should have been appealed within 30 days of its entry. This argument is correct. However, Appellant clearly, although erroneously, believed the order was subject to post-trial motions pursuant to Pa.R.C.P. 227.1. This belief is evidenced by Appellant's filing, within 10 days of the entry of the order, a Motion for Post–Trial Relief. The trial court accepted and fostered this incorrect procedure, as evidenced by its May 17, 2000 letter revoking its earlier order for a 1925(b) statement and its entry of the May 19, 2000 Rule which was returnable outside of the 30–day appeal period.

For the record, the April 27, 2000 order was final and directly appealable. *Lachat v. Hinchcliffe*, 769 A.2d 481 (Pa.Super.2001) (holding a trial court's order which explicitly imposed sanctions on a finding of contempt final and appealable). Post-trial motions pursuant to Pa.R.C.P. 227.1 were inappropriate. The petition for reconsideration could only have stayed the appeal period if the trial court expressly granted reconsideration pursuant to Pa. R.A.P. 1701(b)(3). No action taken by the trial court in this case qualified as an express grant of reconsideration. *Cheathem v. Temple Univ. Hosp.*, 743 A.2d 518, 520–21 (Pa.Super.1999) (holding a customary order and rule to show cause fixing a briefing schedule and/or hearing date, or any other order except for one which expressly grants reconsideration inadequate under Pa.R.A.P. 1701(b)(3)). Thus, the appeal period was not stayed by any of the pleadings Appellant filed, and the appeal is technically untimely. However, we will

---

* Retired Justice assigned to the Superior Court. Justice MONTEMURO did not participate in the decision of this matter.

1. While this letter is not included in the certified record, it is attached to Appellee's Motion to Quash and both parties make reference to it.

not penalize a party when its procedural errors are shared equally by those of the trial court. *Cornell v. D'Italia,* 287 Pa.Super. 233, 429 A.2d 1186, 1188 (1981) (declining to penalize appellants' premature appeal when failure was a result of both their and the court's failure to follow Rules of Civil Procedure concerning entry of adjudication in an equity action).

¶ 5 Thus, because the trial court treated the post-trial motions as proper under Pa. R.C.P. 227.1,[2] we will accept that treatment in this instance and treat the appeal as properly filed within 30 days of the denial of post-trial motions. Accordingly, the Motion to Quash is denied.

¶ 6 Turning to the merits of this appeal, Appellant's principal argument is that the trial court erred in failing to apply the Labor Anti–Injunction Act ("the Act"), 43 P.S. §§ 206a–206r, in its determination of Appellant's civil contempt. The purpose and relevant provisions of the Act were summarized by the Pennsylvania Supreme Court in *Phar–Mor, Inc. v. United Food & Commer. Workers Union Local 1776:*

> The Labor Anti–Injunction Act deprives the courts of this Commonwealth of jurisdiction to issue any restraining order or temporary or permanent injunction in labor disputes except in strict conformity with its provisions. 43 P.S. § 206d. No restraining order or injunction may be issued contrary to the stated public policy of the Act, which is declared as follows:
>
> > Under prevailing economic conditions developed with the aid of governmental authority for owners of property to organize in the corporate and other forms of ownership association, the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment, wherefore, though he should be free to decline to associate with his fellows, it is necessary that he have full freedom of association, self-organization, and designation of representatives of his own choosing to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint or coercion of employers of labor or their agents in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection.
>
> 43 P.S. § 206b.
>
> In furtherance of this stated policy, the Act provides that no court shall issue any restraining order or temporary or permanent injunction except under extremely limited circumstances. 43 P.S. § 206i.

541 Pa. 49, 660 A.2d 583, 584 (1995).

¶ 7 In this case, the trial court issued an injunction on October 29, 1999, which prohibited certain unlawful acts on or near the picket line in the related labor dispute. This injunction was amended on November 17, 1999, when the trial court, upon agreement of the parties, added two provisions, including a penalty of $20,000 to be imposed on Appellant for any violation of the injunction. On April 27, 2000, after an incident in which a union agent assaulted an employee of Appellee, the trial court held a civil contempt hearing and determined that James Milligan, the union agent, and Appellant were in contempt of

---

**2.** In fact, the trial court states in its opinion disposing of Appellant's Motion for Post–Trial Relief: "[Appellant] has properly filed this Motion, pursuant to Pennsylvania Rule of Civil Procedure 227.1 . . . ." Trial Court Opinion, 9/25/00, at 1.

the injunction. Milligan was fined $10,000 and Appellant was fined $20,000.[3]

¶ 8 The critical issue in this case is whether the trial court should have applied a heightened standard of proof to determine Appellant's liability for the acts of an individual in its organization.[4] In order to determine whether this heightened standard should have been applied, we must first determine the nature of the trial court's authority to grant this injunction. As stated above, the Act prohibits injunctions in labor disputes except in limited circumstances. Two provisions of the Act address these limited circumstances. We will first discuss 43 P.S. § 206d, which provides, in pertinent part (emphasis added):

> No court of this Commonwealth shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case included within this act, except in strict conformity with the provisions of this act .... Provided, however, **That this act shall not apply in any case—**
> (d) Where in the course of a labor dispute as herein defined, an employe, or employes acting in concert, or a labor organization, or the members, officers, agents, or representatives of a labor organization or anyone acting for such organization seize, hold, damage, or destroy the plant, equipment, machinery, or other property of the employer with the intention of compelling the employer to accede to any demands, conditions, or terms of employment, or for collective bargaining.

¶ 9 In its opinion disposing of post-trial motions in this case, the trial court indicated that the entry of the injunction was based upon this section and subsection of the Act, and therefore, the case was exempt from the Act, including the section requiring the heightened standard outlined in § 206h. We disagree.

¶ 10 Nowhere in its orders issuing the injunction and subsequent amendments did the trial court make any finding or holding indicating that the injunction was made pursuant to § 206d. Rather, the trial court based the injunction upon the following determinations:

1. [Appellant] and other persons acting on their behalf have engaged in unlawful mass picketing, and in harassing and intimidating conduct;

2. Such unlawful conduct is likely to continue unless restrained by this Court;

3. [Appellee] will suffer immediate and irreparable injury if [Appellant] is permitted to engage in unlawful picketing, obstruction, harassment, and intimidation; [Appellee] has no adequate remedy at law; and

4. Greater injury will be inflicted upon [Appellee] by the denial of preliminary injunctive relief than would be inflicted upon [Appellant] by the granting of such relief;

Order of Court, 10/29/99, at 1.

¶ 11 These determinations echo almost exactly the provisions of 43 P.S. § 206i, which provides:

> No court of this Commonwealth shall issue any restraining order or a temporary or permanent injunction in any case involving or growing out of a labor dispute, except after hearing the testimony of witnesses in open court (with opportunity for cross-examination) in support of the allegations of a complaint made under oath, and testimony in opposition

---

**3.** Mr. Milligan's involvement in this case has been resolved.

**4.** The heightened standard of proof is set forth in 43 P.S. § 206h, discussed *infra*.

thereto, if offered, and except after findings of fact by the court to the effect—

(a) That unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained, but no temporary or permanent injunction or temporary restraining order shall be issued on account of any threat or unlawful act, excepting against the person or persons, association or organization, making the threat or committing the unlawful act, or actually authorizing or ratifying the same after actual knowledge thereof.

(b) That substantial and irreparable injury to complainant's property will follow unless the relief requested is granted.

(c) That, as to each item of relief granted, greater injury will be inflicted upon complainant by the denial of relief than will be inflicted upon defendants by granting of relief.

(d) That no item of relief granted is relief which is prohibited under section six of this act.

(e) That complainant has no adequate remedy at law; and

(f) That the public officers charged with the duty to protect complainant's property are unable to furnish adequate protection.

Such hearing shall be held only after a verified bill of complaint and a verified bill of particulars specifying in detail the time, place, and the nature of the acts complained of, and the names of the persons alleged to have committed the same or participated therein, have been served, and after due and personal notice thereof has been given, in such manner as the court shall direct, to all known persons against whom relief is sought, and also to the chief of those public officials of the county and city, within which the unlawful acts have been threatened or committed, charged with the duty to protect complainant's property. The hearing shall consist of the taking of testimony in open court with opportunity for cross-examination and testimony in opposition thereto, if offered, and no affidavits shall be received in support of any of the allegations of the complaint.

¶ 12 We hold that, without a specific finding at the time of the issuance of the injunction that the injunction was being issued pursuant to 43 P.S. § 206d, that section does not apply. Because there was no such finding in this case and the trial court's determinations track the considerations set forth in § 206i, we treat the injunction as having been authorized under § 206i. Therefore, without the exemption from the Act present in § 206d, it is clear that the other provisions of the Act apply in this case.

■ ¶ 13 We then move forward to the application of 43 P.S. § 206h. This section provides:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute as herein defined, shall be held responsible or liable in any civil action at law or suit in equity or in any criminal prosecution for the unlawful acts of individual officers, members or agents, except upon proof beyond a reasonable doubt in criminal cases, and by the weight of evidence in other cases, and without the aid of any presumptions of law or fact, both of—(a) the doing of such acts by persons who are officers, members or agents of any such association or organization; and (b) actual participation in, or actual authorization of, such acts, or of ratification of such acts

after actual knowledge thereof by such association or organization.

¶ 14 This section was thoroughly analyzed by our Supreme Court in *Gajkowski v. Int'l Bhd. of Teamsters, Etc.*, 519 Pa. 320, 548 A.2d 533 (1988) (*Gajkowski II* ).[5] In *Gajkowski II*, a picket line was disrupted when, after a "deplorable combination of escalating tensions, alcohol and firearms," a union member shot two other union members and a security guard. *Id.* at 543. The union was held liable at a jury trial for damages stemming from the shooting incident. In reversing the finding of liability, the Supreme Court denounced the use of the doctrines of *respondeat superior* and vicarious liability in situations covered by the Act. It then found that, despite the fact that individual shop stewards, negotiating agents and a picket line manager were involved in the events leading up to the shooting, there was "virtually no evidence that they were authorized in any way by the leadership, or the full 5,000 person membership of [the local union], to do what they did. There is no evidence whatever that they exercised, or were granted the discretion to exercise, the authority of the [local union] itself to engage in violence." *Id.*

¶ 15 In this case, the incident at issue involved James Milligan, an individual designated by Appellant to be in charge at the picket site. On the date in question, Mr. Milligan left the picket site, followed an Appellee employee and physically assaulted him. The trial court found Milligan in civil contempt and, because Milligan was an agent of Appellant, also found Appellant in contempt. Appellant argues that, under the heightened standard set forth in 43 P.S. § 206h, it should not be held liable for Milligan's actions. We agree.

¶ 16 There is no evidence that the membership of Appellant as a whole authorized Milligan's actions either *de facto* or *de jure*. His position as an agent of Appellant alone can not pierce the level of protection afforded to Appellant by § 206h. We find the facts in this case analogous to those in *Gajkowski II*. Accordingly, we vacate the order finding Appellant in civil contempt.

■ ¶ 17 However, even without the higher protection of § 206h, we believe Appellant should not have been held responsible for Milligan's actions in this incident. We contrast the situation in this case with that in *Schnabel Assoc., Inc. v. Bldg. And Construction Trades Council*, 338 Pa.Super. 376, 487 A.2d 1327 (1985), in which a panel of this Court upheld a similar claim of union responsibility without utilizing the heightened standard of proof. In *Schnabel*, the union was enjoined from misconduct at its picket line. Following the entry of the injunction, however, several union members committed acts of violence on the picket line. The offending union members and the union were found in civil contempt of the injunction. On appeal, this Court found the evidence was sufficient to support the finding of civil contempt. The *Schnabel* court measured the evidence in the following manner:

Although Pennsylvania courts have not established a clearcut measure of union liability for its members in the civil contempt context, we are guided by the standard set forth in *National Labor Relations Board v. Teamsters, Chauffeurs, Helpers & Taxicab Drivers, Local No. 327*, 592 F.2d 921 (6th Cir.1979). In that case, the circuit court upheld the Master's finding that the union was in civil contempt of prior orders prohibiting mass picketing, blocking entrances to

---

5. *Gajkowski II* withdrew an earlier opinion of the Supreme Court, *Gajkowski v. Int'l Bhd. Of*

*Teamsters, Etc.*, 515 Pa. 516, 530 A.2d 853 (1987).

the employer's business premises, and threatening harm to employees and property. The court ruled that (1) lack of effective action by the union, in the face of flagrant violations by union members, to repudiate the misconduct amounted to silent approbation and acquiescence in such activities, and (2) the union's tacit approval of the members' acts of violence during the labor disputes rendered the union responsible for its members' misconduct.

*Schnabel,* 487 A.2d at 1336.

¶ 18 Accordingly, the *Schnabel* court particularly relied on the trial court's findings of fact, which indicated, *inter alia,* the union took no action to investigate or control the continued acts of violence occurring on the picket line.

¶ 19 We believe the instant case is distinguishable from *Schnabel* on that basis. Appellant **did** take action to investigate and control the misconduct that had occurred on its picket line. First, they **stipulated** to the injunction at issue, thus acknowledging the problem and aiding the court in proposing a solution, including a $20,000 fine to be imposed on Appellant in the event of further misconduct on its part. Further, pursuant to the terms of the stipulated injunction, Appellant placed a union agent on the picket line to be responsible for maintaining order. Although this agent was the individual who committed the assault at issue here, it would be difficult to say, after evaluating Appellant's actions, that it tacitly approved of acts of violence by any member or that it took no action to curb the misconduct.

¶ 20 Contempt order vacated. Judgment reversed.