UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL 72, Carol A. Backes, Ken Karasek, and John Chincola, Plaintiffs,

v.

BOROUGH OF DUNMORE, Council Pres. Joseph Tomko, Jr., Council Member Paul Nardozzi, Mayor Patrick Loughney, Chief Salvatore Mecca, Officer Ron Sleboda, Officer Sal Marchese, and Officer Patrick Reese, Defendants.

No. 3:CV–95–2022.

United States District Court, M.D. Pennsylvania.

Jan. 7, 1999.

Butsavage & Associates, Washington, D.C., for plaintiffs.

Buchanan, Ingersoll Professional Corp., Philadelphia, PA, for defendants.

## MEMORANDUM

VANASKIE, District Judge.

Plaintiff United Food and Commercial Workers Union, Local 72, along with several of its members—Carol A. Backes, Ken Karasek, and John Chincola—has brought this civil rights action under 42 U.S.C. § 1983 against defendant Borough of Dunmore (Borough), along with various Borough officials and police officers, asserting that the Borough had unlawfully arrested and threatened the arrest of several members of Local 72 in connection with the picketing of the Price Chopper Supermarket, 1228 O'Neill Highway, Dunmore, Pennsylvania. (Dkt. Entry 1.)[1] Local 72 and its members are not seeking monetary damages; rather, their complaint seeks declaratory and injunctive relief, along with attorneys fees. (*Id.*)

The crux of the dispute is whether the defendants had probable cause to believe that plaintiffs' informational picketing on the sidewalk and in the parking lot immediately adjacent to the Price Chopper store constituted "defiant trespass" in violation of 18 Pa.Cons.Stat.Ann. § 3503(b). Plaintiffs contend that probable cause was and is lacking because their picketing falls within a statutory affirmative defense with respect to presence in areas open to the public, provided there is compliance with all "lawful conditions imposed on access to or remaining in the premises." 18 Pa. Cons.Stat.Ann. § 3503(c)(2). Defendants counter that plaintiffs informational handbilling contravened Price Chopper's "no solicitation" policy, alleged to be a "lawful condition" for being on Price Chopper property.

On March 31, 1997, I denied the Borough's motion to dismiss, noting, *inter alia,* that the record had to be developed with respect to Price Chopper's "no solicitation" policy. (Dkt. Entry 39, at 7.) Discovery has now been completed and both parties have moved for summary judgment. (Dkt. Entries 48 & 64.) Because it is clear that Local 72's handbilling contravenes Price Chopper's "no solicitation" policy, and Pennsylvania law pertaining to the enforcement of a "no solicitation" policy remains uncertain, a police officer could reasonably conclude that probable cause exists to arrest a Local 72 member picketing on Price Chopper property. Accordingly, defendants' motion for summary judgment will be granted.

## I. STANDARD OF REVIEW

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "Facts that could alter the outcome are material facts." *Charlton v. Paramus Bd. of Educ.,* 25 F.3d 194, 197 (3d Cir.), *cert. denied,* 513 U.S. 1022, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

Initially, the moving party must show the absence of a genuine issue concerning any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 329, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse*

---

1. Plaintiffs will sometimes be referred to in this opinion as Local 72, and defendants will sometimes be referred to as the Borough.

*Elec. Co.,* 862 F.2d 56, 59 (3d Cir.1988); *Continental Ins. Co. v. Bodie,* 682 F.2d 436 (3d Cir.1982). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence to defeat a properly supported motion for summary judgment." *Anderson,* 477 U.S. at 256–57, 106 S.Ct. 2505. The affirmative evidence must consist of verified or documented materials. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. *Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 657 (3d Cir.1990). Rule 56 requires the entry of summary judgment, after adequate time for discovery, where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

## II. BACKGROUND

In June of 1995, Price Chopper opened a new supermarket at the O'Neill Highway shopping center in Dunmore, Pennsylvania. On June 14, 1995, members of Local 72 began to picket and handbill on the sidewalk in front of the store. (Defs' Stat. of Facts (Dkt. Entry 67) ¶ 1.) [2] In essence, the handbills criticized Price Chopper for its employment of part-time employees, rather than full-time employees with benefits. (Defs' Exs. (Dkt. Entry 66) Ex. 15.) Near the bottom of the handbill, the following message appeared: "Create full-time jobs! Don't Shop Price Chopper." (*Id.*)

As a result of picketers distributing handbills encouraging patrons not to shop at Price Chopper, the Price Chopper store manager called the police. In response to this call, several Dunmore police officers, Police Chief Salvatore Mecca and Borough Solicitor Robert Cordaro reported to the Price Chopper supermarket to attempt to resolve the conflict. According to Solicitor Cordaro, a representative from Price Chopper complained that Price Chopper had a no solicitation policy and wanted the picketers off its private property as such activity violated the no solicitation policy. (Cordaro Dep. (Dkt. Entry 54) at 40–41.) Police Chief Mecca received a written statement from the Price Chopper store manager indicating that Price Chopper did not want the distribution of literature on its property. (Mecca Dep. (Dkt. Entry 55) at 10.) [3] Price Chopper also had two no solicitation signs on its front door. (Osterstrom Dep. (Dkt. Entry 60) at 52.) Rodney Osterstrom, a Price Chopper loss prevention specialist, testified that Price Chopper maintained the following policy regarding solicitation: "Nonassociates are

---

**2.** Local 72 also submitted a statement of facts in connection with its summary judgment motion. This statement, however, failed to comply with Local Rule 56.1, which requires "[s]tatements of material facts in support [of], or in opposition to, a motion shall include references to the parts of the record that support the statements." Local 72's statement of material facts in support of its motion for summary judgment fails to cite to any portions of the record. (Dkt. Entry 50.) Moreover, Local 72's statement of material facts in opposition to the Borough's statement of facts also fails to cite to any portion of the record. (Dkt. Entry 73.) To the extent that Local 72 admitted the Borough's assertions, this Memorandum will cite to the Borough's statement of material facts in support of its motion for summary judgment. Thus, any reference to the Borough's statement of facts

(Dkt. Entry 67) should be read as indicating that Local 72 has admitted that such facts are not in dispute. Otherwise, the part of the record supporting a factual assertion will be cited.

**3.** That written request provided:

I, Bob Folensbee store manager at Price Chopper on O'Neill Highway Dunmore Pa—REQUEST that no one distribute literature and/or economic issues on the property.

(Plfs' Exs. (Dkt. Entry 62) Ex. 11.) Local 72 contends that this written request demonstrates that Price Chopper was targeting the economic message of the picketers. But this request covers all literature "and/or economic issues."

prohibited from soliciting and distributing literature at all times anywhere on company property including parking lots." (Osterstrom Dep. (Dkt. Entry 60) at 49.) Moreover, Price Chopper has provided a copy of its Human Resources Policies and Procedures Manual, which outlines the following procedure:

1. Store Managers will inform any individual or organization that we do not permit solicitation or distribution of literature on our premises.

2. A "NO SOLICITATION" sign will be posted in the front window near the entrance of the store.

(Defs' Exs. (Dkt. Entry 66) Affidavit, Ex. A.) [4] As a result of the initial confrontation and discussions with Solicitor Cordaro on June 14, 1995, the picketers agreed to move away from the store. (Defs' Stat. of Facts (Dkt. Entry 67) ¶ 6.) Local 72 does not claim that any of the events that occurred on June 14, 1995 violated its members' constitutional rights. (Id. ¶ 9.) [5]

On June 20, 1995, Local 72's counsel wrote to Solicitor Cordaro to orchestrate some compromise between the Borough, Local 72 and Price Chopper. (Plfs' Exs. (Dkt. Entry 62) Ex. 17.) In this letter, Local 72's counsel suggested that the picketers should be permitted to picket on the driveway islands that exist at the entrance to the shopping plaza. (Id.) Local 72's counsel also stated that Price Chopper's property interest in such islands would be limited and that the picketers would not be trespassing. (Id.) Solicitor Cordaro gave this letter to Councilman Paul Nardozzi, a Price Chopper employee, so that Mr. Nardozzi could give the proposal to the appropriate authorities at Price Chopper. (Id. Ex. 20.) [6]

On June 27, 1995, Local 72's counsel wrote a letter to Mayor Patrick Loughney in which it was again proposed that the

---

**4.** Local 72 claims that there is no evidence that Price Chopper had a no solicitation policy or that a "NO SOLICITATION" sign appeared on the front door of the Price Chopper supermarket. (Plfs' Stat. of Facts (Dkt. Entry 73) ¶¶ 3–4.) Rodney Osterstrom, a Price Chopper loss prevention specialist, testified to the existence of both the policy as well as the sign. Thus, there is indeed evidence to support Price Chopper's assertions and Local 72 has provided nothing, save unsubstantiated denials, to contradict Price Chopper's evidence. In the absence of countervailing evidence, it must be concluded that there is no *genuine* dispute that Price Chopper did indeed have a "no solicitation" policy and that a "NO SOLICITATION" sign was posted on the front door of the Price Chopper when the picketing began on June 14, 1995.

Moreover, it is apparent that at some point during the Summer of 1995, Local 72 did become aware of the no solicitation policy. For instance, in July 1995, Local 72's counsel responded to Price Chopper's reliance on a no solicitation policy. (Plfs' Exs. (Dkt. Entry 62) Ex. 6.) It is also clear that Price Chopper's no solicitation policy was made known to Local 72's members. For instance, Ken Karasek represents that he was aware of Price Chopper's no solicitation policy in September of 1995, but believed it was unenforceable. (Karasek Decl. (Dkt. Entry 52) ¶ 2.) Furthermore, to the extent that Local 72 seeks prospective injunctive relief, it is obvious that

Local 72 is now on notice of the no solicitation policy.

**5.** On or about June 16, 1995, Local 72 filed with the National Labor Relations Board an unfair labor practice charge, contending that Price Chopper wrongfully caused Dunmore Borough to remove Local 72's picketers from the public areas adjacent to the Price Chopper store under threat of arrest. This charge was later withdrawn.

**6.** Local 72 contends that Councilman Nardozzi's connection with Price Chopper casts a suspicious shadow upon the Borough's dealings with Local 72. In other words, Local 72 insinuates that Nardozzi was using his official position to involve the Borough in a private dispute between Local 72 and his employer, Price Chopper. There is no evidence to support this claim. First, it is undisputed that the Borough Council had nothing to do with the decision to arrest or threaten to arrest the picketers; rather, this decision was committed to the discretion of Solicitor Cordaro. (Tomko Dep. (Dkt. Entry 56) at 32.) Moreover, Nardozzi asked to have himself recused from any discussions regarding Price Chopper's problems. (Nardozzi Dep. (Dkt. Entry 59) at 10–19; Osterstrom Dep. (Dkt. Entry 60) at 14.) Although Nardozzi did provide Price Chopper with information involving the Borough's position, Local 72 has produced no evidence to suggest any improper conduct.

picketers be allowed to picket on the traffic islands. (Plfs' Exs. (Dkt. Entry 62) Ex. 1.) Moreover, Mayor Loughney was warned that the picketers intended to begin their informational handbilling on June 28, 1995. (*Id.*)

On June 28, 1995, a representative from Price Chopper contacted the Dunmore Police to report that the picketers had returned, whereupon Officers Sleboda and Boland were dispatched to the shopping plaza. (Defs' Stat. of Facts (Dkt. Entry 67) ¶ 16.) [7] It is undisputed that the picketers were acting in a peaceful manner. The picketers were advised that they could lawfully picket on the traffic islands. (Plfs' Exs. (Dkt. Entry 62) Ex. 13.) All of the picketers moved except for Carol Backes, who was individually given several more warnings before she was arrested for obstructing a public passage under 18 Pa. Cons.Stat.Ann. § 5507(b)(*l*). (*Id.*) [8]

On June 29, 1995, Local 72 counsel mailed a letter to Police Chief Mecca as well as Solicitor Cordaro, ostensibly to place those individuals "on notice" that Price Chopper's sidewalk and parking lot were "open to members of the public" such that Local 72 believed that any arrest for defiant trespass would be invalid because Local 72 had a valid affirmative defense under 18 Pa.Cons.Stat.Ann. § 3502(c)(2). (Plfs' Exs. (Dkt. Entry 62) Exs. 2, 3.) [9] On that same date, Local 72's counsel also mailed a letter to Solicitor Cordaro that challenged the Carol Backes' citation for obstruction of a public passage. (Plfs' Exs. (Dkt. Entry 62) Ex. 4.) [10] On July 18, 1995, the charge against Carol Backes was withdrawn. [11]

7. The dispatch report stated that "the manager from Price Chopper called Police regarding picketers who were blocking the entrance and soliciting customers as they entered the store." (Plfs' Exs. (Dkt. Entry 62) Ex. 13.)

8. Carol Backes maintains that she was arrested "[a]t the direction of the Solicitor and Police Chief." (Backes Decl. (Dkt. Entry 51) ¶ 4.)

9. Section 3503(c)(2) provides that it is a defense to prosecution for defiant trespass that:

   the premises were at the time open to members of the public and the actor complied with all lawful conditions imposed on access to or remaining in the premises.

10. Carol Backes was originally charged with a violation of 18 Pa.Cons.Stat.Ann. § 5507(b)(ii), which required that a person refuse an official request to move where public safety was threatened by a "dangerous hazard." Solicitor Cordaro suggested that Carol Backes was intended to be charged with a violation of § 5507(b)(i), which makes it a crime to refuse to obey a reasonable official request to move to prevent the obstruction of a public passage. Local 72 argued that there was no evidence that she had obstructed any passage by any of Price Chopper's patrons. Moreover, Local 72 also argued that to the extent that Price Chopper maintains that its sidewalk is private, § 5507(b)(i) would be inapplicable because it only applied to public passages. (Plfs' Exs. (Dkt. Entry 62) Ex. 4.)

There is no need to address Local 72's contentions inasmuch as Backes does not seek damages, and defendants do not contend that the statutory prohibition concerning obstruction of public passageways affords a basis for arresting those picketing on Price Chopper's property in the future. Thus, as to the arrest for obstructing a public passage, any request for injunctive relief is moot. Moreover, any claim for declaratory relief is likewise moot because no case or controversy as to Backes' arrest now exists between the parties. *See Hickman v. Missouri*, 144 F.3d 1141, 1142–43 (8th Cir.1998) (finding that declaratory judgment actions must be dismissed where no case or controversy exists); *see also Kasza v. Browner*, 133 F.3d 1159, 1172 (9th Cir.) (noting that where offending conduct will not recur, request for declaratory judgment is moot), *cert. denied,* — U.S. ——, 119 S.Ct. 414, 142 L.Ed.2d 336 (1998); *Norman–Bloodsaw v. Lawrence Berkeley Lab.*, 135 F.3d 1260, 1274 (9th Cir.1998) (finding that where it is clear that alleged violations will not recur and no effects remain from alleged violations, request for declaratory relief is moot).

11. The parties dispute the significance of this action. Local 72 argues that Solicitor Cordaro conceded that the charge was meritless. On the other hand, Solicitor Cordaro maintains that he recommended the dismissal of the charge to accommodate Local 72 in an attempt to amicably resolve the picketing dispute. (Cordaro Dep. (Dkt. Entry 54) at 68.) The parties dispute on this point is immateri-

On or about June 30, 1995, as a result of Local 72's efforts to demonstrate the legality of its position and Price Chopper's failure to provide any legal authority in support of its position, Solicitor Cordaro informed Police Chief Mecca to refrain from interfering with the picketers. (Defs' Stat. of Facts (Dkt. Entry 67) ¶ 28.) [12] Relying upon this advice, Police Chief Mecca posted the following sign at the Dunmore Police headquarters:

> Attn: All Police Officers
>
> Officers will respond to Price Chopper for *all emergency calls* ex fight assault. *We will not respond for picketers! standing in front of store peacefully.*
> Atty Bob Cordaro/Chief

(Plfs' Exs. (Dkt. Entry 62) Ex. 14 (emphasis in original).) [13]

On July 6, 1995, Price Chopper mailed Solicitor Cordaro a letter outlining its legal position that an employer cannot be compelled to allow non-employee union members to distribute literature on its private property. (Defs' Opp. Brf. (Dkt. Entry 74) Claridge Aff., Ex. A.) Price Chopper reiterated that the picketers were trespassing and that the Borough Police should require them to move to a public place within the shopping center not controlled by Price Chopper. (*Id.*) Price Chopper emphasized that it was applying a uniform no solicitation/no distribution rule. (*Id.*)

On July 10, 1995, Local 72's counsel responded to Price Chopper's legal position, contending that Price Chopper had failed to demonstrate that distributing handbills in a place open to the public could be a crime under Pennsylvania law. (Plfs' Exs. (Dkt. Entry 62) Ex. 5.) On July 11, 1995, Price Chopper responded to Local 72's July 10, 1995 letter, attempting to distinguish the case law relied upon by Local 72 and to support its position that the defiant trespass statute could form the basis for criminal prosecution of the picketers. (Defs' Opp. Brf. (Dkt. Entry 74) Claridge Aff., Ex. B.) On July 19, 1995, Local 72 responded to Price Chopper's July 11, 1995 letter, contending that Pennsylvania law permitted picketers to distribute handbills in areas open to the public despite the existence of no solicitation policies. (Plfs' Exs. (Dkt. Entry 62) Ex. 6.) For several weeks after this flurry of legal "briefing," no action was taken by the Borough in relation to the picketers.[14]

In the middle of September, Price Chopper requested and received a special meeting with the Borough Council. After this meeting, Solicitor Cordaro determined that Price Chopper's position was correct and determined that there was probable cause to believe that distribution of handbills on Price Chopper's property constituted defiant trespass. (Cordaro Dep. (Dkt. Entry 54) at 119–33.) [15] Solicitor Cordaro then

---

al. Because it is the threat to arrest Local 72 members for defiant trespass which animates this lawsuit for declaratory and injunctive relief, whether there existed probable cause to cite Backes for obstructing a public passageway is academic.

12. On that same date, Attorney Cordaro faxed a copy of Local 72's letter and case law to Price Chopper, commenting that "[t]hese cases seem to validate the Union's 'entranceway picketing'.... Please provide me with any supportive case law today so I can advise police properly." (Plfs' Exs. (Dkt. Entry 62) Ex. 18.)

13. Although Solicitor Cordaro had determined to allow the picketers to continue their activity, the Borough entered into an agreement with Price Chopper whereby Price Chopper agreed to indemnify the Borough for

any expenses and/or attorneys' fees resulting from litigation related to Borough action in connection with the picketers. (Plfs' Exs. (Dkt. Entry 62) Ex. 19.)

14. On July 11, 1995, Police Chief Mecca received a letter from the Pennsylvania State Police in response to his request for guidance as to the proper approach to take in relation to the picketers. (Plfs' Exs. (Dkt. Entry 62) Ex. 15.) Apparently, the Lackawanna County District Attorney's Officer was contacted, but had failed to recommend any action. (*Id.*) The State Police letter did little to assist Police Chief Mecca or Solicitor Cordaro in their decisionmaking process.

15. Solicitor Cordaro contended that he spoke with a District Attorney in a western Pennsylvania county regarding a similar case and

called Local 72's counsel to inform him of the decision and that the picketers should restrict their activity to the islands. (*Id.* at 152.) Solicitor Cordaro then told the police that they should arrest any picketer who would not move from the front of the Price Chopper supermarket to the islands. (*Id.* at 157.)

On September 19, 1995, the picketers were forced to move from the front of the Price Chopper supermarket after the Dunmore police had threatened them with arrest for defiant trespass. (Kessler Decl. (Dkt. Entry 53) ¶ 14.)[16] On September 22, 1995, the picketers again returned to the front of the Price Chopper supermarket and were again confronted by the Dunmore police and dispersed under threat of arrest.[17]

As a result of the Borough's decision to enforce the defiant trespass statute with respect to picketing directly in front of the entranceway for the Price Chopper supermarket, Local 72 instituted this civil rights action, seeking a declaratory judgment that the Borough had violated its members' constitutional rights through its arrest and threatened arrests and also seeking injunctive relief to prohibit the Borough from interfering with its picketing activities. The Borough opposed this action, asserting that no constitutional rights were violated or will be violated by the Borough in connection with the arrest of Carol Backes or any future arrest of any Local 72 picketer who violates Price Chopper's no solicitation policy.

that the District Attorney indicated that the picketers were forced to cease their activities because they were trespassing on private property. (*Id.* at 119.) Solicitor Cordaro, however, could not remember the details of this conversation and no written decision was ever handed down in that case.

**16.** It is undisputed that the police officers were acting under the orders of Police Chief Mecca, who had discussed the problem with Solicitor Cordaro and was acting pursuant to Solicitor Cordaro's advice.

## III. DISCUSSION

### A. Employer's Right to Exclude Nonemployee Union Representatives

It is well-settled that an employer may lawfully exclude nonemployee union members from the employer's private property unless other reasonable alternate methods of communication are inaccessible. *See NLRB v. Babcock & Wilcox Co.,* 351 U.S. 105, 112, 76 S.Ct. 679, 100 L.Ed. 975 (1956) ("[A]n employer may validly post his property against nonemployee distribution of union literature if reasonable efforts by the union through other available channels of communication will enable it to reach the employees with its message."); *see also Lechmere, Inc. v. NLRB,* 502 U.S. 527, 536–38, 112 S.Ct. 841, 117 L.Ed.2d 79 (1992) (finding that where reasonable alternative means of communication exist, an employer may exclude nonemployee union members from its private property); *Lloyd Corp. v. Tanner,* 407 U.S. 551, 567, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972) ("It would be an unwarranted infringement of property rights to require [employers] to yield to the exercise of First Amendment rights under circumstances where adequate alternative avenues of communication exist."); *Central Hardware Co. v. NLRB,* 407 U.S. 539, 547, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972) (finding that retail store parking lot was not "open to the public" and that the retail store could exclude nonemployee union members from parking lot); *Metropolitan District Council v. NLRB,* 68 F.3d 71, 72–73 (3d Cir.1995) (noting that "at common

**17.** According to the police dispatch report, the officers threatened to arrest the picketers for obstructing a public passage under 18 Pa.Cons.Stat.Ann. § 5507, not the defiant trespass statute. (Plfs' Exhibits (Dkt. Entry 62) Ex. 16.) In the context of this action, however, this threat is not relevant as Local 72 seeks declaratory and injunctive relief prohibiting the Borough from using the defiant trespass statute to disperse Local 72 picketers.

law and thus under Pennsylvania law, [an employer] has the general right to decide who may come on to its property"). In *Cleveland Real Estate Partners v. NLRB*, 95 F.3d 457 (6th Cir.1996), the court considered whether an owner of a strip mall committed an unfair labor practice when it prohibited union members from distributing handbills that criticized certain retail stores for hiring non-union employees. After considering the relevant precedents, the court concluded:

> "We hold ... that the owner of private commercial premises may forbid handbilling by 'nonemployee' union organizers engaged in nonorganizational, informational activity directed at the general public, unless the union can show that it is entitled to trespass on the owner's private property because the inaccessibility to the general public to which the handbilling is directed 'makes ineffective the reasonable attempts by nonemployees to communicate with [the public] through the usual channels.'"

*Id.* at 464; *see also United Food & Commercial Workers v. NLRB*, 74 F.3d 292, 297 (D.C.Cir.) (finding that employer may deny access to nonemployees seeking to trespass on the employer's property for purpose of distributing handbills to customers regarding "boycott" activity), *cert. denied*, 519 U.S. 809, 117 S.Ct. 52, 136 L.Ed.2d 16 (1996).

Local 72 contends that *Babcock, Lechmere* and their progeny have no application in this case. Local 72 argues that the issue is not whether Price Chopper committed an unfair labor practice under the National Labor Relations Act, but rather whether the Borough could arrest union members for defiant trespass under Pennsylvania law. In other words, Local 72 contends that the defiant trespass law in Pennsylvania cannot be enforced to do that which federal law authorizes: prohibiting handbilling on an employer's private property that is otherwise open to the public.

**B.  Defiant Trespass and No Solicitation Policies**

The offense of defiant trespass is defined as follows:

> (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by:
>
> (i) actual communication to the actor; or
>
> (ii) posting in a manner prescribed by law or reasonably likely to come to the attention of intruders; or
>
> (iii) fencing or other enclosure manifestly designed to exclude intruders.

18 Pa.Cons.Stat.Ann. § 3503(b).  As noted above, there is a statutory affirmative defense that pertains when the premises in question are open to the public and the alleged trespasser complies with all lawful conditions for being on the premises.  18 Pa.Cons.Stat.Ann. § 3503(c).

In this case, Price Chopper asserted that it had a lawful condition for being on its property—no soliciting of others.  Local 72 contends that under Pennsylvania law an individual distributing union literature cannot be arrested for defiant trespass in connection with disobedience of such a no solicitation policy.  Local 72, thus, argues that defendants lack probable cause to arrest Local 72 members for defiant trespass.

In support of this position, Local 72 relies upon the Pennsylvania Superior Court decision in *Phar–Mor, Inc. v. United Food & Commercial Workers Union*, 429 Pa.Super. 393, 632 A.2d 913 (1993).  In that case, union representatives were going into the employer's non-unionized stores and distributing union literature. After the local police refused to act without a court order, the employer sued in state court to obtain injunctive relief against the union's leafleting activity.  The employer, contending that the leafleting violated its no solicitation/no distribution policy and thus constituted criminal tres-

pass, sought preliminary injunctive relief. The union argued that such relief was barred by the Pennsylvania Labor Anti–Injunction Act, 43 P.S. § 206a, *et seq.* This legislation prohibits the issuance of injunctions in any labor dispute unless certain statutory criteria are satisfied, including, *inter alia,* that "unlawful acts have been threatened and will be committed unless restrained, or have been committed and will be continued unless restrained. . . ." 43 P.S. § 206i. In considering the "unlawful act" requirement, the Superior Court stated:

> Local 1776 did not obstruct entrances or exits to the stores and people or property were never at risk of injury. Local 1776 members entered the Phar–Mor stores, passed out literature and conversed with employees about the benefits of union membership. We are satisfied that the mere scattering of union literature around the stores and the occurrence of verbal exchanges between Phar–Mor managers and Local 1776 representatives does not constitute unlawful activity for purposes of satisfying 43 P.S. § 206i(a).

*Phar–Mor, Inc.,* 429 Pa.Super. at 399, 632 A.2d 913. With respect to the employer's argument that the union representatives were defiant trespassers in violation of its no solicitation policy, the Superior Court simply noted that the stores were open to the public and the union's activities did not breach the peace. *Id.* The court stated that it would "not allow Phar–Mor to circumvent the Act by alleging 'trespass' when Local 1776 acted peacefully, without threat or injury to people or property, and with the purpose of educating and informing employees about Union membership." *Id.* Furthermore, the Superior Court was impressed by the police department's refusal to act without a court order, noting that such actions suggested that the police department believed that the union representatives were not acting unlawfully. *Id.* at 401–02, 632 A.2d 913.

The Pennsylvania Supreme Court, on September 16, 1994, granted allowance of appeal in the *Phar–Mor* case. *Phar–Mor, Inc. v. United Food & Commercial Workers Union,* 538 Pa. 659, 648 A.2d 790 (1994). On June 20, 1995, while the dispute between Price Chopper and Local 72 was beginning to simmer, the lower court judgment in *Phar–Mor* was affirmed by an evenly divided Pennsylvania Supreme Court. *Phar–Mor Inc. v. United Food & Commercial Workers Union,* 541 Pa. 49, 56, 660 A.2d 583 (1995).

Three Justices—Zappalla, Cappy and Castilla—held to the Superior Court's view that "[n]o unlawful acts were committed or threatened to be committed by the union. The distribution of union literature in the stores and contact with store managers is not unlawful under 206i(a)." *Phar–Mor,* 541 Pa. at 56, 660 A.2d 583. In a footnote, Justice Zappala wrote that "I agree with the lower courts that the union's disregard of Phar–Mor's No Solicitation/No Distribution policy by engaging in discussions with employees and leafletting was not an unlawful act of criminal trespass. . . ." *Id.* at 56 n. 1, 660 A.2d 583. Three other justices, Nix, Flaherty and Montemuro, criticized the Pennsylvania Superior Court's decision as having "clearly ignored unlawful behavior by the [union]." *Id.* at 61, 660 A.2d 583. Justice Flaherty, speaking for Chief Justice Nix and Justice Montemuro, observed that in light of the violations of the store's no solicitation policy, it was "glaringly evident" that the union had committed acts constituting criminal trespass. *Id.* at 62, 660 A.2d 583. With respect to the Superior Court's reference to the refusal of the police to intervene in the absence of a court order, Justice Flaherty wrote:

> To affirm such an erroneous conclusion that [the union's] trespassory conduct was lawful serves only to heighten the inability of the police to understand the law and to enforce it uniformly against all trespassers. Unwillingness of the police to intervene is equivalent to an

inability to protect the property rights of the complainant.

*Id.* at 65, 660 A.2d 583.

▆▆▆ Local 72 maintains that the Supreme Court's even division in *Phar–Mor* leaves the Superior Court's opinion as determinative of state law on the enforceability of a no solicitation policy in the context of informational handbilling. Contrary to Local 72's argument, the Pennsylvania Supreme Court decision destroys any precedential value of the Superior Court decision. Where, as here, the Pennsylvania Supreme Court is evenly split on an issue, the lower court judgment is affirmed, but is deprived of precedential value. *See In re Griel's Estate,* 171 Pa. 412, 416–17, 33 A. 375, 377 (1895); *Community Med. Servs. of Clearfield, Inc. v. Local 2665, Am. Fed'n of State, County & Mun. Employees,* 292 Pa.Super. 238, 243 n. 3, 437 A.2d 23, 26 n. 3 (1981); *Commonwealth v. Grimm,* 63 Lanc.L.R. 577 (Pa. Common Pleas 1973). In other words, the issue remains unsettled and neither the lower court opinion nor the opinions of the divided appellate court judges can be invoked as *stare decisis.* While the judgment in *Phar–Mor* is binding as to the parties in that case, "it settled nothing and is not a precedent." *Commonwealth v. Heller,* 147 Pa.Super. 68, 78, 24 A.2d 460, 465 (1942); *accord Etting v. Bank of U.S.,* 24 U.S.(11 Wheat.) 59, 77–78, 6 L.Ed. 419 (1826); *Commonwealth v. Reid,* 265 Pa. 328, 335, 108 A. 829, 832 (1919). As recognized in *Grimm:*

> "Where the judgment of the lower court is affirmed, by operation of law, by reason of an equal division of opinions in the appellate court, the judgment, while binding in the particular case as fully as a decision rendered by an unanimous court, is not binding as precedent, and, when the same question arises in a subsequent case by the other parties, it is treated as an open one and the former decision is not to be invoked as stare decisis."

*Grimm,* 67 Lanc.L.R. at 583. Accordingly, the impact of a no solicitation policy with respect to a charge of defiant trespass was not settled by *Phar–Mor.* The opinions of the divided Supreme Court are instructive, but not definitive.[18]

Decisions of the Pennsylvania Supreme Court and other courts, while not determinative, do afford some guidance. For example, in *Western Pennsylvania Socialist Workers 1982 Campaign v. Connecticut General Life Insurance Co.,* 512 Pa. 23, 515 A.2d 1331 (1986), the court ruled that a private owner of a shopping mall could prohibit persons from soliciting signatures for political purposes. In *Commonwealth v. Downing,* 511 Pa. 28, 511 A.2d 792 (1986), the court held that a non-student could be convicted of defiant trespass for refusing to leave a law school library. In *Armes v. City of Philadelphia,* 706 F.Supp. 1156 (E.D.Pa.1989), *aff'd mem.,* 897 F.2d 520 (3d Cir.1990), cited approvingly in *Commonwealth v. Hagan,* 539 Pa. 609, 618, 654 A.2d 541 (1995), the court found probable cause to arrest abortion protestors on private property for defiant trespass, rejecting the protestors' reliance on the statutory affirmative defense applicable to premises open to the public. Relying upon *Central Hardware Co. v. NLRB,* 407 U.S. 539, 92 S.Ct. 2238, 33 L.Ed.2d 122 (1972), and *Lloyd Corp. v. Tanner,* 407 U.S. 551, 92 S.Ct. 2219, 33 L.Ed.2d 131 (1972), both of which sus-

---

**18.** In determining whether Pennsylvania law would permit a criminal charge for defiant trespass where a nonemployee union member ignores an employer's no solicitation policy and distributes union literature on the employer's private property, the precedents of the Pennsylvania Supreme Court, of course, must be examined first. *Koppers Co. v. Aetna Casualty & Surety Co.,* 98 F.3d 1440, 1445 (3d Cir.1996). Even the opinions in a split deci-

sion must be addressed. *See Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir.1985) ("Although an opinion of less than a majority of the Pennsylvania Supreme Court is not a controlling precedent in an issue of state law ..., such an opinion is 'not to be ignored in ascertaining the law of Pennsylvania.'" (quoting *Vargus v. Pitman Mfg. Co.,* 675 F.2d 73, 76 (3d Cir.1982))).

tained the right of an owner of property open to the public to prohibit handbilling and picketing on the owner's premises, the *Armes* court held that the peaceful activity of abortion protestors undertaken on private property open to the public could be prosecuted as a defiant trespass. *Armes,* 706 F.Supp. at 1164. Specifically, the court determined that "[t]he City's action to enforce the defiant trespass law constitutes a reasonable protection of the clinic's private property rights." *Id.* at 1165.[19]

In summary, there is no clearly controlling legal precedent in Pennsylvania on the question of whether peaceful handbilling could be conducted on private property notwithstanding the owner's no solicitation policy and direction to the picketers to leave the premises. While three Justices in *Phar–Mor* indicated that informational handbilling could not be prosecuted as criminal trespass, three other Justices reached the opposite conclusion, and precedents in the context of political solicitations and abortion protests weigh in favor of the property owner. Also weighing in favor of the property owner are federal court decisions recognizing the right of an employer under federal labor law to proscribe informational handbilling on its property, even when that property is open to the public.

## C. Probable Cause for Defiant Trespass

In *Radich v. Goode,* 886 F.2d 1391 (3d Cir.1989), several anti-abortion protestors were arrested for defiant trespass when they crossed into a private parking lot, despite warnings by police officers to remain on the public sidewalk. *Id.* at 1392. The protestors asserted the affirmative defense that the property was open to the public and that they complied with all lawful conditions regulating their access to the property. *Id.* at 1396.[20] An action was brought in federal court challenging the validity of the arrests. The court assumed, without deciding, that police officers should consider affirmative defenses in making their probable cause determination. *Id.* In affirming the entry of summary judgment in favor of the law enforcement officers, the Third Circuit stated:

> [T]he success of [plaintiffs'] claim that they were arrested without probable cause, hinges on whether a reasonable police officer, under the facts and circumstances of this case, would know that the condition [regulating access to the property] was unlawful and therefore, that appellants had an affirmative defense to the defiant trespass statute.

> Whether the condition imposed on access to the parking lot under these circumstances is lawful is a question not readily answered by precedents applying Section 3503. *It is, however, a question we need not answer here; as we have noted, the standard for probable cause turns not on the actual guilt or innocence of the arrestee, but rather*

---

**19.** Other courts in this Circuit have likewise held that probable cause existed to arrest anti-abortion protestors for defiant trespass in the context of a § 1983 action, even when the trespass warnings came from the police officers as opposed to the property owners. *See Dowling v. City of Phila.,* 855 F.2d 136, 142 (3d Cir.1988) (finding civil rights action must fail because probable cause existed to support arrest for defiant trespass where abortion protester had been repeatedly warned not to cross property line by police officers, but continued to trespass); *Corbett v. Goode,* No. 87–7360, 1990 WL 181499, at *4 (E.D.Pa. Nov.19, 1990) ("A police officer reasonably could have believed that a person who was warned at least twice not to step into an area,

and who nevertheless stepped into the area, did so knowing that she was neither privileged nor licensed to enter the prohibited area."); *McMonagle v. Goode,* No. 87–7355, 1989 WL 46119, at *1–2 (E.D.Pa. Apr.25, 1989) (finding probable cause to arrest protestor where police had verbally warned several times to remain on public sidewalk); *Walton v. Goode,* No. 87–7354, 1989 WL 43631, at *2 (E.D.Pa. Mar.22, 1989) (same).

**20.** The protestors claimed that any property that was open to the public resulted in an "unfettered right" to engage in expressive activity. *Id.*

*whether the arresting officer reasonably believed that the arrestee had committed the crime....* Contrary to [plaintiffs'] assertions, Pennsylvania Courts have not clearly interpreted Section 3503 to assure protestors of an "unfettered right" to engage in expressive activity on private property that is "open to the public," as the term appears in Section 3503.

\* \* \* \* \* \*

The brief survey of Pennsylvania law illustrates that the legality of the condition imposed here is not readily discernable to a police officer making arrests or city official formulating policy to enforce private trespass rights.... *Therefore, under the circumstances, we cannot impose upon a police officer or a city official authorizing the arrest policy the duty to correctly predict how a court will answer this unresolved and complex legal issue.*

*Id.* at 1397 (emphasis added).[21]

Nine years after *Radich*, the law of criminal defiant trespass remains unclear in Pennsylvania. It may be that the Pennsylvania Supreme Court will find that a "no solicitation" policy is not a lawful condition to impose on one who otherwise is entitled to be in a place open to the public. But it is not necessary to predict that the Pennsylvania Supreme Court would reach this decision. The question here is not whether a "no solicitation" policy is a "law-ful condition" for remaining on privately-owned property that is open to the public. What is at issue here is whether there is a reasonable basis for the conclusion that a "no solicitation" policy is a lawful condition. As recognized by Local 72 itself, "[t]he issue here is whether defendants had reasonable, good faith probable cause to believe the plaintiffs committed a crime when they peacefully and unobstructively picketed at the shopping center...." (Plf's Supp.Br. (Dkt. Entry 49) at 1.)

■■■ "Probable cause exists when the facts and circumstances are 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Radich*, 886 F.2d at 1395 (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964)). "[L]iability can be imposed on a police officer only if 'on an objective basis, it is obvious that no reasonably competent officer would have concluded that probable' cause existed." *Radich*, 886 F.2d at 1395.

■■■ In this case, the evidence established that a no solicitation policy was posted on the front door of the Price Chopper.[22] The Borough Solicitor was informed that the informational handbilling violated the no solicitation policy. Local 72's members were repeatedly warned by Borough police officers that they were not to distribute literature in front of the Price Chopper.[23] Despite being placed on notice

---

21. In a concurring opinion, Judge Hutchinson stated:

> On the merits, I agree with the majority that because there is no clear precedent on the issue, the [defendants] cannot be held to a duty of predicting whether the Pennsylvania courts will conclude that the condition is unlawful. The arrests were therefore on probable cause and were not violative of federal law.

*Id.* at 1399.

22. To this extent, this case is distinguishable from *Coatesville Development Co. v. United Food & Commercial Workers*, 374 Pa.Super. 330, 542 A.2d 1380 (1988). In that case, the no solicitation policy was placed in the vestibule of the store, where it could not be seen from the outside by picketers. *Id.* at 334, 542 A.2d 1380. In this case, the unrefuted testimony is that the no solicitation sign was placed on the front door. Moreover, to the extent that this action seeks prospective injunctive relief, Local 72 can no longer contend that it is unaware of the no solicitation policy.

23. As noted in the anti-abortion protester cases in which the protestors claimed that the police lacked probable cause to arrest for defiant trespass because the clinics were open to the public, the protestors' refusals to obey warnings of police officers to stay on the public sidewalk was deemed sufficient to support an arrest for defiant trespass.

that Price Chopper did not authorize them to conduct such activities on its private property, Local 72's members continued to picket and distribute handbills in front of Price Chopper's front doors. As stated in *Radich*, "the success of [Local 72's] claim ... hinges on whether a reasonable police officer, under the facts and circumstances of this case, would know that the [no solicitation] condition was unlawful and therefore that [Local 72] had an affirmative defense to the defiant trespass statute." 886 F.2d at 1397.

In this case, the Borough police officers did not act unilaterally. They were advised by the Borough's legal advisor. Solicitor Cordaro concluded that Price Chopper could lawfully ban handbilling at the entrance of its store. The absence of clear Pennsylvania precedent on this issue, with some authority sustaining his opinion, necessarily renders his conclusion reasonable. As *Radich* recognizes, the Borough officials did not have to be correct in their decision to arrest Local 72's members; they only needed a reasonable basis for concluding that the handbilling was contrary to a lawful condition to be on Price Chopper's property. Solicitor Cordaro's advice provided that reasonable basis.

Moreover, the police officer's reliance upon the Solicitor's advice in acceding to Price Chopper's demands that its private property rights be protected demonstrates their good faith. *Cf. Lee v. Mihalich*, 847 F.2d 66, 71 (3d Cir.1988) (reliance on advice of counsel establishes good faith of arresting officer). Given the uncertain nature of Pennsylvania law regarding defiant trespass, a reasonable police officer, armed with advice of counsel, could conclude that a defiant trespass occurs when a Local 72 member knowingly violates Price Chopper's no solicitation policy. *See Radich, supra.* Therefore, Local 72's requests for declaratory and injunctive relief must fail.[24]

## IV. CONCLUSION

As in *Radich*, Pennsylvania law is in an uncertain state in relation to defiant trespass based upon violation of a no solicitation policy. As noted by the Third Circuit, police officers and city officials cannot be expected to predict the manner in which the Pennsylvania Supreme Court will resolve this issue. As long as there is some reasonable basis for believing that a no solicitation policy is en-

**24.** Local 72 relies upon *Commonwealth v. White*, 342 Pa.Super. 1, 492 A.2d 32 (1985), to support its contention that there must be some breach of peace in order to convict an individual of defiant trespass for being in a place where the public is generally invited. This interpretation of *White* was rejected by the Third Circuit. *Radich*, 886 F.2d at 1397 n. 6. In *White*, the defendant was at a place generally open to the public and was adhering to the lawful conditions placed upon public access. *Id.* at 6–7, 492 A.2d 32. Admittedly, where an individual complies with all of the lawful conditions attached to property open to the public, then a defiant trespass charge will not lie. In this case, however, Local 72 has failed to adhere to the no solicitation policy, arguably a lawful condition placed upon access to the property. Therefore, *White* is easily distinguishable.

Local 72 also contends that the Borough police lacked probable cause because the police were placed on "notice" that the area was open to the public and that Local 72 was complying with all of the lawful conditions.

In essence, Local 72 argues that placing the Borough police on notice of their intent to assert an affirmative defense to defiant trespass obviated any probable cause. This assumption rests upon the faulty premise that the no solicitation policy is unenforceable. For purposes of this case, it is enough that the no solicitation policy is arguably enforceable. Stated otherwise, the burden was on Local 72 to show that a reasonable police officer would know that a "no solicitation" policy is unenforceable; under the state of Pennsylvania law, Local 72 cannot discharge its burden.

In essence, Local 72 has attempted to use this declaratory judgment action under § 1983 to obtain an advisory opinion regarding the status of Pennsylvania law in relation to no solicitation policies and defiant trespass. *Radich* rejects such an approach. Instead, the proper avenue for determining the enforceability of a no solicitation policy in light of the uncertainty in state law is to challenge a conviction for defiant trespass in state court.

forceable, a reasonable police officer has probable cause for an arrest for defiant trespass where a union member knowingly violates the *no solicitation policy.* Since June of 1995, there has been a reasonable basis for believing that a no solicitation policy is enforceable. Therefore, the Borough's motion for summary judgment will be granted and Local 72's motion for summary judgment will be denied.